**Margaret TRUJILLO, Plaintiff-Appellee,**

v.

**LONGHORN MANUFACTURING COMPANY, INC., Defendant-Appellant.**

No. 81–1012.

United States Court of Appeals,
Tenth Circuit.

Dec. 1, 1982.

Paul A. Cooter and Rod M. Schumacher of Atwood, Malone, Mann & Cooter, P.A., Roswell, N.M., for defendant-appellant.

Dan A. McKinnon, III of Marron, McKinnon & Ewing, Albuquerque, N.M., for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

This appeal, after a trial to the district court, from a back pay award totalling $3,597.60 in favor of plaintiff and an assessment of plaintiff's attorney's fees against defendant in the sum of $6,416 presents only two issues: (1) did the district court commit reversible error by finding defendant liable for this Title VII award as a successor employer to the corporation which employed plaintiff, and (2) did the district court commit reversible error by amending its original judgment to increase plaintiff's back pay award by $287.60 under Rule 60(a) of the Federal Rules of Civil Procedure.

## I

### *The factual background*

In 1977 plaintiff, a Caucasian, applied for work at a fireworks factory located in Roswell, New Mexico, under the name Margaret Mulhern. The Longhorn Manufacturing Company, Inc., a Texas corporation, operated the factory. Plaintiff submitted her application to Eddie Arnett, a supervisor. Periodically plaintiff checked on the status of her application. She was not hired.

In May 1978 plaintiff applied at the factory again. On this occasion she applied as Margaret Trujillo, using the surname of a man she had lived with for about eleven years. Again plaintiff tendered the application to Arnett. After reading the second application, Arnett told plaintiff to begin work the next morning as a fireworks assembler.

After eight days on the job, plaintiff was fired. Shortly thereafter she filed a complaint against Longhorn with the Equal Employment Opportunity Commission (EEOC), contending that she was unlawfully harassed, primarily by one Hispanic-surnamed supervisor, and discharged because of her ethnic origin. After investigation, and approximately one year later, the EEOC issued a "Right to Sue" letter, having found reasonable cause to believe plaintiff's allegations of discrimination. (I R. 2; I R. 5, para. 2).

In the meantime, two months after plaintiff's discharge Longhorn Manufacturing Company, Inc., sold substantially all of its assets, including its corporate name, to a group of buyers in New Mexico. (I R. 38). The buyers incorporated in New Mexico under the name "Longhorn Manufacturing Company, Incorporated." The new corpo-

ration was capitalized largely by the assets acquired from the Texas corporation. The successor continued to operate the Roswell fireworks factory. *(Id.)*. One of the buyers, Larry Brown, was the vice-president and general manager of the original Longhorn Manufacturing Company, Inc. He received 25 per cent of the stock of the New Mexico company and continued as general manager. (III R. 58). The successor New Mexico corporation utilized substantially the same facilities, supervisory personnel and production methods as the predecessor Texas corporation. (I R. 40). After the sale of assets, the Texas corporation changed its name to Virginia Robertson Enterprises. (I R. 38).

Plaintiff filed this action in February 1980 against the New Mexico "Longhorn Manufacturing Company, Inc.," claiming a violation of the Equal Employment Opportunity Act, 42 U.S.C. § 2000e–2(a)(1)[1] (herein Title VII) and a violation of 42 U.S.C. § 1981.[2] The action was based on allegations that the discharge was prompted by her ethnic background and not by faulty work performance. She sought back pay plus interest under Title VII and compensatory and punitive damages under 42 U.S.C. § 1981.

In its answer, defendant New Mexico Longhorn Manufacturing Company, Incorporated, denied all allegations of discriminatory discharge. It further averred that it had been incorporated under New Mexico law in September 1978 and had never employed plaintiff. (I R. 5).

The district court found that it was "clear from the evidence produced at trial that plaintiff was treated differently ... because she was an Anglo [and that this] disparate treatment of the plaintiff fol-lowed by her eventual discharge was in violation of Title VII." (I R. 42). The court held defendant Longhorn Manufacturing Co., Inc., liable for plaintiff's damages as the successor to the Texas corporation. *(Id.)*. The court said that defendant had actual notice of the pending EEOC complaint at the time of its formation, as shown by the testimony of Larry Brown, general manager of both corporations. The court also found that there was a substantial continuity of the business operation.

As support for its conclusion that there was a substantial business continuity between the two corporations the district court pointed to the following facts: (1) the same plant was used for the manufacture of fireworks; (2) substantially the same work force and supervisory personnel were used, including plaintiff's supervisor, who was instrumental in the discriminatory acts; (3) the same jobs and working conditions existed and; (4) the same machinery, equipment and methods of production were used. (I R. 40, 42). It was unclear from the evidence, the court stated, whether the predecessor Texas corporation had the ability to provide relief. The court also noted that because of the procedural requirements of Title VII, it was no longer possible at the time of the court's decision for the plaintiff to initiate a suit against the Texas corporation. (I R. 41). The court said that defendant must be held liable for the discriminatory acts of the predecessor corporation in order to effectuate the ameliorative goals of Title VII. Finally, the district court dismissed plaintiff's claim under 42 U.S.C. § 1981, saying that the successor employer concept was inapplicable to that cause of action. No cross-appeal was taken and thus

1. 42 U.S.C. § 2000e–2(a)(1) provides:
   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin; ...

2. 42 U.S.C. § 1981 declares:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

this latter ruling is not before us for review.

■ Defendant stresses two main propositions for reversal, contending that (1) the trial court erred by imposing liability on defendant as a successor to the company by which plaintiff was actually employed; and (2) the court erred by amending its original judgment to correct an alleged "clerical error." There are other challenges to the findings of discrimination and harassment. However, defendant points only to numerous denials of discrimination and harassment in the record which fail to demonstrate that the findings on these points were clearly erroneous when the record as a whole is considered. We therefore will focus on the two issues set out above.

## II

*The liability of a successor employer for its predecessor's Title VII violations*

■ Defendant concedes that, as a hypothetical proposition, successor employers may be held liable for the discriminatory practices of their predecessors. (Appellant's Brief in Chief at 10). But, defendant states, the general rule is that where one corporation sells its assets to another corporation, the latter is not liable for the former's debts unless the transaction fits within well-defined exceptions. Defendant says the exceptions to the general rule of nonliability as set out in *West Texas Refining & D. Co. v. Commissioner of Int. Rev.*, 68 F.2d 77, 81 (10th Cir.), are controlling. There we stated that the rule of nonliability would apply except

(1) [w]here the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corpora-

tions; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

Defendant asserts that none of these exceptions apply here. It says that exception (3), which the trial court stressed, is inapplicable since none of the stockholders of the Texas corporation were buyers or stockholders of the New Mexico corporation. "A continuation," defendant declares, "envisions a common identity of directors and stockholders, and the existence of only one corporation at the completion of the transfer," citing *Kloberdanz v. Joy*, 288 F.Supp. 817 (D.Colo.1968). (Appellant's Brief in Chief at 6–7.). Hence the test of continuity is not the similarity of businesses but the similarity of the corporate entities. *National Dairy Products Corp. v. Borden Co.*, 363 F.Supp. 978 (D.Wis.1973). Defendant says that where two corporations remain with separate directors and stockholders, there can be no finding of continuity.

We disagree. The district court made a thoughtful analysis of the successor employer concept, relying on the factors set out in *Brown v. Evening News Ass'n*, 473 F.Supp. 1242, 1244–45 (E.D.Mich.1979), which in turn were drawn from *E.E.O.C. v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1094 (6th Cir.1974).[3] In *MacMillan* the Sixth Circuit surveyed the development of the successor employer doctrine in the labor law context and decided that the same policy considerations mandated the application of the doctrine to remedy practices violating Title VII. *MacMillan*, 503 F.2d at 1090. The Sixth Circuit noted that Title VII was largely modelled on the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, where

---

**3.** The *MacMillan* factors include:

1) whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same or substantially the same supervisory personnel, 7) whether

the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product.

*MacMillan*, 503 F.2d at 1094, citing *Howard Johnson Co., Inc. v. Hotel Employees*, 417 U.S. 249, 256–58, 94 S.Ct. 2236, 2240–2241, 41 L.Ed.2d 46, *inter alia*. See the discussion of the district court's holdings in Part I, *supra*.

the successor employer doctrine originally developed. *Id.* at 1091. Furthermore the court noted that the Senate-House Conference Report on Title VII expressed the legislative intention that the courts use wide discretion in exercising equitable powers with the goal of fashioning the most complete relief possible. *Id.* The reasoning of the Sixth Circuit is convincing and we endorse the application of the *MacMillan* factors in analyzing a successor corporation's liability under Title VII. *Accord, Slack v. Havens,* 522 F.2d 1091, 1094–95 (9th Cir. 1975).[4]

■ Defendant has expended the greatest quantum of its argument on the second *MacMillan* factor, the ability of the predecessor to provide relief. Defendant's position is that the predecessor corporation here, Virginia Robertson Enterprises, is able to provide all of the relief awarded plaintiff. At trial defendant relied primarily on its Exhibit A, the agreement for sale of the assets to defendant. That document does set forth a purchase price of $425,000, the terms of payment being $75,000 on closing and the remainder in 120 monthly installments. Defendant elicited testimony that all payments as of the time of trial had been made. (III R. 80–81). Furthermore, defendant contends that Virginia Robertson Enterprises is still a "viable" corporation, not involved in bankruptcy. The amount received, defendant argues, indisputably proves the predecessor's ability to pay the judgment, which is only four percent of the purchase price. In defendant's view, the predecessor's ability to pay is the single most important *MacMillan* factor.

On such a showing we are unwilling to disturb the district court's conclusion. In *MacMillan* the court stated that the "nature and extent of [successor] liability is subject to no formula, but must be determined upon the facts and circumstances of each

case." *MacMillan,* 503 F.2d at 1092. First, as the district court noted and defendant's brief concedes, the sale agreement covered substantially all of the predecessor's physical assets. (I R. 41; Appellant's Brief in Chief at 2). Second, no current financial statement of the predecessor corporation was tendered at trial. The predecessor's receipt of the sale proceeds and its right to continuing payments do not alone demonstrate its ability to pay the judgment when other potential liabilities are not covered by the evidence.

We are not persuaded that imposing liability on the defendant herein as a successor corporation works an unfair hardship on the company. It had notice of the EEOC complaint and could have provided for its nonliability or indemnification in the sale agreement. As noted in *MacMillan,* successor liability is not automatic but should be determined on a case by case basis. In cases such as this, "the equities . . . favor successor liability because it is the successor who has benefited from the discriminatory employment practices of its predecessor." *MacMillan,* 503 F.2d at 1092. Moreover we share the Sixth Circuit's concern with the limitations problem. *See MacMillan,* 503 F.2d at 1092–93.

## III

### *The augmentation of the award and Rule 60(a)*

■ The district court found that plaintiff was unemployed as a result of defendant's unlawful employment discrimination from June 8, 1978, to October 15, 1978, and from May 1, 1979, to August 9, 1979. The court entered judgment of $3,310 based on a pay rate of $2.65 for the first period of unemployment and $2.90 for the second. On plaintiff's motion, the district court augmented the award to $3,597.60 under the

---

**4.** We do not believe that our adoption of the *MacMillan* criteria conflicts in any way with our holding in the *West Texas Refining* case, *supra.* There we reached the conclusion that the transferee company could not be deemed a continuation of the transferor because we had earlier treated the companies as separate entities for tax purposes. *West Texas Refining,* 68 F.2d at 81. In any event, our holding today does not change exception (3) to the general rule of *West Texas Refining;* it merely illuminates the factors to be weighed in analyzing that exception in the context of a Title VII case.

authority of Rule 60(a), Federal Rules of Civil Procedure.[5] The award as augmented covered the same periods of unemployment and utilized the same pay rates. (I R. 52). Apparently in the original award the court calculated the first period of unemployment to be 17 weeks, and not the 18 weeks and two days which it actually was. Moreover the second period was actually 14 weeks and one day, and not the 13 weeks relied on by the district court. The discrepancy between the dates plaintiff was unemployed and the number of weeks on which the back pay calculation was based stemmed from plaintiff's Proposed Findings of Fact and Conclusions of Law. (I R. 28).

Defendant contends that augmentation under Rule 60(a) constituted reversible error. It reasons that the error did not result from miscalculation but rather was due to the failure of the plaintiff to notify the court accurately as to the amount sought. The defendant characterizes the error as a fundamental failure of notification which is not amenable to correction under Rule 60(a). *Bershad v. McDonough*, 469 F.2d 1333 (7th Cir.1972). In the event we do not reverse the entire judgment as defendant urges, alternatively it asks this court to strike the correction and enter judgment for only the original amount awarded. (Appellant's Brief in Chief at 15).

We feel that the augmentation of plaintiff's award was proper in order that the judgment conform to the court's intention. As noted, plaintiff's unemployment periods when multiplied by her hourly wage did not agree with the original amount awarded. The correction did not require any additional proof. It did not enlarge the time period for which defendant was liable for lost wages. We are convinced that the augmentation was proper. *Allied Materials Corp. v. Superior Products Co.*, 620 F.2d 224, 226 (10th Cir.1980).

*Conclusion*

We are persuaded to uphold the district court's ruling on successor liability and its correction of the judgment. No error being demonstrated in the court's rulings, the judgment is

AFFIRMED.

5. The relevant portion of Rule 60(a) provides: Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.