**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**MTC GEAR CORPORATION, and Profile Gear Corporation, Defendants.**

**No. 84 C 4413.**

United States District Court, N.D. Illinois, E.D.

Oct. 3, 1984.

Mary Brinas Manzo, E.E.O.C., Chicago, Ill., for plaintiff.

Shayle P. Fox, Vicki G. Lafer, Penny Nathan Kahan, Fox & Grove, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The Equal Employment Opportunity Commission ("EEOC") brought this action against defendants MTC Gear Corporation ("MTC") and Profile Gear Corporation ("Profile"), alleging that defendants have maintained a discriminatory disability benefits policy in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* Profile has moved for summary judgment under Fed.R.Civ.P. 56(c). For the reasons stated below, we deny Profile's motion.

### Facts and Procedural Posture

Profile's summary judgment motion raises two issues: (1) whether the Supreme Court's decision in *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983), should be applied retroactively to the discriminatory employment practices alleged in the complaint; and (2) whether Profile can be held liable under Title VII as a corporate "successor" to MTC.

For now we will only sketch the factual background. We will develop more facts later as they become relevant to the legal arguments. The complaint alleges that both Profile and MTC manufacture gears and other parts for use in motor vehicles. The parties do not dispute that on December 19, 1983, Profile, a new corporation, bought substantially all of MTC's assets from ITT Industrial Credit Company, a secured creditor of MTC.

The substance of the complaint alleges that since 1979 MTC has violated Title VII

by imposing special limitations on its coverage of the medical expenses incurred by its male employees, while imposing no such limitation on its coverage of the medical expenses incurred by its female employees for the medical expenses of their spouses. The complaint also alleges that since its birth in January 1984, Profile has continued MTC's discriminatory medical coverage policy. The parties seem to agree that this policy falls within the embrace of *Newport News*.[1] Below we will assume so, without finally deciding the issue, which we leave for a later motion for summary judgment.

The EEOC filed the complaint on May 23, 1984, following an investigation which dates back to 1981. On July 6, 1984, Profile filed its motion for summary judgment. No answer has been filed, and to our knowledge discovery has not begun. Although it is unusual for a defendant to move for summary judgment before answering the complaint (such motions are usually styled as ones to dismiss under Rule 12), we will consider Profile's motion as one under Rule 56. *See* Fed.R.Civ.P. 56(b) (defendant may, "at any time," move for summary judgment); *generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 2718.

### Retroactivity of Newport News

Before reaching the successorship issue, we must decide the threshold issue of whether the *Newport News* decision should apply retroactively to MTC's alleged disability policy.[2] "Generally, a decision which changes existing law or policy is given retroactive effect unless retroactive application would cause 'manifest injus-

---

1. *Newport News* held that a pregnancy limitation in a health plan similar if not identical to the one challenged in this case discriminated against male employees in violation of Title VII. The Court surveyed the legislative history of the 1978 Amendment to Title VII, the so-called "Pregnancy Discrimination Act," and concluded that Congress had overruled the holding and rationale of *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (exclusion of disabilities caused by pregnancy from an employer's general disability plan was not sex discrimination).

2. This threshold issue has a limited scope. The complaint alleges that Profile continues to maintain a discriminatory disability benefits policy. Thus, even if *Newport News* applied prospectively only, Profile could still be held liable. The affidavit of Profile's president, which asserts that Profile does not currently maintain such a policy, does not warrant a different conclusion. As noted in the next section, some discovery is needed before we will decide any of the contested factual issues.

tice.'" *NLRB v. Lyon & Ryan Ford, Inc.,* 647 F.2d 745, 757 (7th Cir.1981), *cert. denied,* 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981), *quoting Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The Supreme Court in *Chevron* created a three-part test to determine whether a civil, non-constitutional precedent should be applied prospectively only:

(1) Does the decision establish a new principle of law, either by (a) overruling clear past precedent on which litigants may have relied, or (b) deciding an issue of first impression whose resolution was not clearly foreshadowed?

(2) Will retrospective application of the rule further or retard its operation, considering the history of the rule, and its purpose and effect?

(3) Will retroactivity create substantial inequities, i.e., injustice or hardship for one of the parties?

404 U.S. at 106–07, 92 S.Ct. at 355; *Lyon & Ryan Ford,* 647 F.2d at 757. All three parts of the *Chevron* test must be met to preclude retroactivity; moreover, the Court must presume that a decision will be applied retroactively, and the party opposing retroactivity bears the burden of overcoming the presumption. *Lyon & Ryan Ford,* 647 F.2d at 757; *Valencia v. Anderson Bros. Ford,* 617 F.2d 1278, 1288–89 (7th Cir.1980), *rev'd on other grounds,* 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *Kumrow v. Teamsters General Local No. 200,* 579 F.Supp. 393, 395 (E.D.Wis.1983). We hold that Profile has failed to meet its burden of satisfying the requirements of *Chevron,* and therefore *Newport News* may apply retroactively to this case.

■ Profile argues that *Newport News* "overruled clear past precedent on which" the defendants "may have relied." On May 9, 1983, the Seventh Circuit decided *EEOC v. Joslyn Mfg. and Supply Co.,* 706 F.2d 1469 (1983), which reached a conclusion opposite to the one in *Newport News.* The Supreme Court handed down *Newport News* just forty-two days later, on June 20,

1983, prompting the Seventh Circuit to vacate its earlier holding. 724 F.2d 52 (Dec. 13, 1983). Thus, if *Joslyn* can be considered "clear past precedent," it achieved that status for only forty-two days. The EEOC argues that *Joslyn* was not "clear past precedent" because the Court itself knew that the Circuits were split on the issue and the Supreme Court's decision was imminent. 706 F.2d at 1476. We need not decide whether *Joslyn* was clear past precedent, because even assuming that it is, Profile has failed to prove that it is one "on which the litigants may have relied." Profile concedes it did not exist when *Joslyn* was decided, so it clearly could not have relied on that case. And Profile has presented no evidence that MTC "may have relied" on *Joslyn* during the opinion's brief, forty-two day lifetime. The complaint alleges that MTC's policies have continued with no gap from 1979—well before *Joslyn* —until now. No evidence suggests that during the forty-two days MTC reassessed its policy and decided to keep it in reliance on *Joslyn.* Even if such evidence did exist, it would not affect liability in general, but could only shave a bit from possible damages arising from that time period. Moreover, if such evidence did exist, we do not believe that Profile could meet the third, or "hardship," part of the *Chevron* test, since its reliance could only have lasted forty-two days, involving no change in policies or operations.

We agree with the EEOC that between 1979 and May 1983, there was no clear past judicial precedent on the disability benefits issue. *Compare Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 667 F.2d 448 (4th Cir.1982), *aff'd en banc,* 682 F.2d 113 (1982) (finding Title VII violation), *with EEOC v. Lockheed Missiles and Space Co.,* 680 F.2d 1243 (9th Cir.1982) (finding no Title VII violation), *vacated,* —— U.S. ——, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983). Moreover, in 1979, EEOC guidelines declared that the pregnancy-related coverage at issue was unlawful under the 1978 Amendments to Title VII. *See Newport News,* 462 U.S. at ——, nn. 8, 9, 103

S.Ct. at 2625–26. In sum, then, Profile has failed to meet its burden of showing that the first *Chevron* requirement is satisfied for the period before *Joslyn* was decided, as well as for the short gap between *Joslyn* and *Newport News*. Thus, *Newport News* may apply retroactively to cover the full time period of the Title VII violation alleged in the complaint.[3] *See also EEOC v. Atlanta Gas Light Co.,* No. C81–1090A (N.D.Ga. Dec. 14, 1983) (holding that *Newport News* applies retroactively).

### The Succession Issue

On the issue of whether Profile is MTC's "successor," we must deny summary judgment unless the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). As the movant, Profile bears the burden of showing that no genuine issue of material fact exists. *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984). We must consider the evidence, and the reasonable inferences drawn from the evidence, in the light most favorable to the EEOC, the party opposing summary judgment. *Big O Tire Dealers, Inc. v. Big O Warehouse, et al.,* 741 F.2d 160, 163, (7th Cir.1984). If Profile fails to meet its "strict burden of proof," we must deny summary judgment. *Id.* But if Profile does meet its initial burden, we must see whether the EEOC has met its resulting burden of establishing a genuine issue as to that fact. To meet this burden, the EEOC must rely on more than the bare pleadings or bald assertions. Fed.R.Civ.P. 56(e); *Big O,* 741 F.2d at 163–164, slip op. at 6–7; *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). With these standards in mind, we turn to Profile's motion.

The Seventh Circuit has not defined the standards for holding a successor liable for the Title VII violations of its predecessor. Indeed, it has never addressed whether a successor doctrine should apply to Title VII at all. The Sixth Circuit addressed this issue first, holding that a successor doctrine applies to Title VII cases. *MacMillan v. Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir.1974). The court considered the development of Supreme Court successorship doctrine under the National Labor Relations Act ("NLRA"),[4] concluding that "the emphasis that both [the NLRA and Title VII] place on extending protection to and providing relief for the victims of prohibited practices" justified holding a corporate successor liable for the Title VII violations of its forebear. 503 F.2d at 1091. The Court then borrowed "a multiplicity of factors" from the labor context, which it held should be applied on a case-by-case basis to determine whether a corporate successor should be held liable:

(1) whether the successor company had notice of the charge;

(2) the ability of the predecessor to provide relief;

(3) whether there has been a substantial continuity of business operations;

(4) whether the new employer uses the same plant;

(5) whether he uses the same or substantially the same work force;

(6) whether he uses the same or substantially the same supervisory personnel;

(7) whether the same jobs exist under substantially the same working conditions;

(8) whether he uses the same machinery, equipment and methods of production; and

(9) whether he produces the same product.

---

**3.** We need not address the second and third *Chevron* requirements, since all three must be met to preclude retroactivity.

**4.** *See Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388

(1973); *NLRB v. Burns Int'l Security Services, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

*Id.* at 1094 (citations omitted). Two other circuits have adopted the *MacMillan* approach. *Trujillo v. Longhorn Mfg. Co., Inc.,* 694 F.2d 221 (10th Cir.1982); *Slack v. Havens,* 522 F.2d 1091 (9th Cir.1975); *see also Forde v. Kee Lox Mfg. Co., Inc.,* 584 F.2d 4, 6 (2d Cir.1978) (citing *MacMillan* with approval, but not explicitly applying all nine factors). We agree with the Tenth Circuit that the "reasoning of the Sixth Circuit is convincing," *Trujillo,* 694 F.2d at 225, and accordingly we adopt the *MacMillan* approach in this case.

The nine-part *MacMillan* test is obviously fact based. Profile has not persuaded us that no genuine issue of material fact exists with respect to the nine-part test. We need only point to a few of the *MacMillan* factors. With regard to the first, or "notice," factor, Profile has submitted an affidavit of its President, Alex Vucitech, stating that he had no notice of the EEOC charges filed against MTC. But Mr. Vucitech was admittedly also President of MTC when those charges were filed. We believe this fact creates strong inference—which we must consider in the light most favorable to the EEOC—that Vucitech did know of the EEOC charge against MTC, and thus a genuine issue of fact exists on the notice issue.

Moving to the second factor, the record is unclear as to whether MTC, the predecessor, can provide any relief. The complaint alleges that MTC sold all of its assets to Profile, which suggests it is no longer in business. This factor would seem to point against summary judgment for Profile.

Similarly, as to the other factors, either genuine issues exist or they weigh against

Profile. Profile apparently uses the same plant as MTC, and now produces the same product.[5] There are disputes in affidavits about the continuity of the work force, the supervisory personnel and the capital equipment.[6] In short, this case is replete with genuine issues of material fact.

And this is no surprise. The EEOC filed the case only four months ago. It asserts that discovery has not yet begun. While the *MacMillan* factors should be readily ascertained through discovery, it would be a rare case that could resolve the issue without discovery. *See Forde v. Kee Lox Mfg. Co., Inc.,* 584 F.2d 4, 5 (2d Cir.1978) (parties agreed about material facts). Indeed, the cases cited earlier all disposed of the issue after much more extensive factual development. *Trujillo,* 694 F.2d at 225 (deciding *MacMillan* issue after full trial); *Slack,* 522 F.2d at 1094–1095 (case also went to trial); *see also MacMillan,* 503 F.2d at 1094 (reversing district court's granting of summary judgment because affidavits raised genuine issues of fact).

Because genuine issues of material fact exist, we must deny Profile's motion for summary judgment. This holding does not imply that summary judgment will be inappropriate later in the case; it is only improper now. The parties should now proceed expeditiously through discovery,[7] cooperating fully with an eye toward a possible summary judgment motion (or cross-motions) after the evidence is gathered in discovery.

*Conclusion*

Profile's motion for summary judgment is denied. It is so ordered.

---

**5.** Profile argues that it is developing a new process which will eventually account for 40% of its business later this year. However, it seems that Profile's products are currently the same as MTC's were. At a minimum, a genuine issue exists here, which can be resolved through discovery.

**6.** Profile asserts that we should discount or ignore the EEOC's affidavits. Essentially, Profile argues that its affidavits are more credible than the EEOC's. This argument misunderstands the Court's role in deciding a motion for summary

judgment. In general, we must defer our credibility judgments until trial. Right now we consider the evidence in the light most favorable to the EEOC. *See generally* 10A C. Wright, & Miller & M. Kane, *Federal Practice and Procedure,* § 2727.

**7.** In this regard, the parties should meet prior to the October 12, 1984 status hearing and prepare an agreed expedited discovery schedule for presentation at the status hearing. It is so ordered.