Alvaro J. ARNAL, Plaintiff,

v.

ASPEN VIEW CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation; Aspen Snowmass Care, Inc. D.B.A. First Choice Properties & Management, Inc., a Colorado corporation; Aspen Snowmass, LLC D.B.A First Choice Properties & Management, a foreign limited liability company; Jack Smith, an Individual; and Heather Vicenzi, an Individual; Defendants.

Civil Action No. 15–cv–01044–WYD–MJW

United States District Court, D. Colorado.

Signed 03/28/2017

Phyllis Ann Roestenberg, Phyllis A. Roestenberg, Esq., Law & Mediation, Denver, CO, for Plaintiff.

Debra J. Oppenheimer, HindmanSanchez, P.C., Lakewood, CO, John Kevin Bridston, Holland & Hart, LLP, Denver, CO, for Defendants.

**ORDER**

WILEY Y. DANIEL, SENIOR UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

THIS MATTER is before the Court on individual defendants Jack Smith and Heather Vicenzi's Motion to Dismiss First Amended Complaint (ECF No. 94) and the Motion to Dismiss Claims Against Aspen Snowmass, LLC D.B.A. First Choice Properties & Management, a Foreign Limited Liability Company (ECF No. 92). Defendants Smith and Vicenzi challenge Plaintiff's First Amended Complaint and Jury Demand (ECF No. 84), seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The two individual defendants claim that they cannot be held individually liable because "they acted strictly in their capacities as members of the Board of Managers" for Aspen View Condominium Association, Inc. ("AVCA" or "Association"). (ECF No. 94, at 2).

Defendant Aspen Snowmass, LLC D.B.A. First Choice Properties & Management, Inc., a foreign limited liability company ("FCP LLC") argues that it cannot be held liable for assets it purchased from Aspen Snowmass Care, Inc., D.B.A. First Choice Properties & Management, Inc. ("FCP"), after the alleged period of discrimination occurred. Defendant FCP LLC does not cite a rule for its motion, but I construe it as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

The matter arises out of allegations by Plaintiff Alvaro J. Arnal ("Arnal"), that Aspen View Condominium Association, Inc., Aspen Snowmass Care, Inc., D.B.A. First Choice Properties & Management, Inc., and individual defendants Jack Smith and Heather Vicenzi's (collectively "Defendants"), acts constitute discrimination, retaliation, and interference with contract in violation of the Fair Housing Amendments Act of 1988 ("FHA") at 42 U.S.C. §§ 3601–3619.

## II. FACTUAL BACKGROUND

Plaintiff Arnal is a joint-owner of a condominium unit located within the Aspen

View Condominiums ("premises"). (ECF No. 84, First Amended Complaint ¶ 27). Defendant AVCA is a Colorado non-profit corporation. (Compl. ¶ 21). Plaintiff alleges that the property is, and has been at all relevant times, managed by Defendant FCP or its successor FCP LLC. (Compl. ¶ 22). Plaintiff alleges that Defendant FCP was a Colorado corporation registered as Aspen Snowmass Case, Inc., D.B.A. First Choice Properties & Management, Inc., which dissolved after service of process and without notice to Plaintiff on October 7, 2015. (Compl. ¶ 23). Defendant FCP LLC is a foreign limited liability company registered as Aspen Snowmass Care, Inc., D.B.A. First Choice Properties & Management, which succeeded Aspen Snowmass Care, Inc., D.B.A. First Choice Properties & Management, Inc., and currently manages Aspen View Condominiums. (Compl. ¶ 24).

Defendant Jack Smith and Defendant Heather Vicenzi were, at all times relevant to this action, members of AVCA's Board. (Compl. ¶¶ 25, 26). The premises are governed by the bylaws, rules and policies promulgated by AVCA's Board of managers, sometimes referred to as its Board of Directors ("Board"). (Compl. ¶ 28). The Board is comprised of three AVCA members, and at all times relevant to this case, the acting Board members were Cliff Mohwinkel, now deceased, Defendant Smith and Defendant Vicenzi. (Compl. ¶ 29). Plaintiff alleges that the acts and omissions as they apply to AVCA were the acts and omissions of AVCA Board members Smith, Vicenzi, and Mohwinkel. (Compl. ¶ 29).

Pursuant to AVCA's Rules and Regulations, dogs are not permitted on the premises. (Compl. ¶ 30). In September 2013, Plaintiff decided to vacate his unit and rent it out. (Compl. ¶ 31). A prospective renter contacted Plaintiff on October 5, 2013, who disclosed to him that she has a disability for which she uses a service dog. (Compl. ¶¶ 33, 34). Beginning on October 11, 2013, Plaintiff sent a number of emails seeking a determination on whether her service dog would be permitted on the premises. (Compl. ¶¶ 33–40). On October 29, 2013, Plaintiff contacted Board President, Cliff Mohwinkel, to ask if a decision had been reached regarding his prospective tenant. (Compl. ¶ 41). The email indicated the prospective tenant's desire to rent Plaintiff's unit starting in November, to which Mr. Mohwinkel responded that an attorney had been consulted and that he would keep Plaintiff informed on any developments. (Compl. ¶ 41). After receiving no response, Plaintiff emailed all three Board members, including Defendant Smith and Defendant Vicenzi, iterating that it had been a month since he initially notified them about his prospective tenant and her service animal. (Compl. ¶ 43). Plaintiff and his prospective tenant entered into a written lease agreement on November 22, 2013. (Compl. ¶ 44).

On December 24, 2013, Plaintiff received a letter from the Board's President, Mr. Mohwinkel, with AVCA's new policy on assistance dogs, along with a list of questions the Board requested he and his tenant answer by January 6, 2014. (Compl. ¶ 46). The letter also requested a visit with Plaintiff, his tenant and the service dog in question. (Compl. ¶ 46). Plaintiff alleges that the Board, acting through Defendant Smith, Defendant Vicenzi and Mr. Mohwinkel, afforded Plaintiff's tenant seven days over the holidays to supply information, including: "a written request for accommodation directed to the Board's President; 'reliable documentation' of her disability; 'reliable documentation' of her disability-related need for the dog; 'reli-

able documentation' of the type of disability-related assistance provided by the service dog; and 'documentation of training and certification, if the dog at issue is an 'assistance dog' as defined in the Association's policy relating to service dogs." (Compl. ¶ 47). AVCA's new service animal policy provided circumstances in which the Board, at its discretion, may grant such an accommodation. (Compl. ¶ 48). Additionally, the Board had the power to evaluate the facts surrounding the request and balance the needs of all parties involved to determine whether maintaining a particular dog on the premises would be reasonable. (Compl. ¶ 48).

On January 8, 2014, Plaintiff, his tenant and her service dog, met with Mr. Mohwinkel and Defendant Vicenzi. (Compl. ¶ 49). During the forty-five minute interview, the two asked questions about the tenant's disability, such as the nature of her disability, the frequency of her seizures, how the seizures manifest, the means by which she controlled her seizures, and the manner by which her service dog alerts and assists her disability. (Compl. ¶ 51).

On January 20, 2014, Defendant AVCA sent Plaintiff a letter seeking additional information from the tenant, and also detailed that Defendant AVCA would make an exception to its "no-dogs policy" if the tenant provided the requested documentation and followed a set of proscribed rules. (Compl. ¶ 56). Further, the letter stated that failure to comply with the Board's requirements would result in a $50 fine assessed to Plaintiff, per incident, per day. (Compl. ¶ 56). On January 30, 3014, Plaintiff sent a letter to Mr. Mohwinkel regarding the validity of some of its requests. (Compl. ¶ 58). Mr. Mohwinkel responded, stating that the Board unanimously agreed that the response was not acceptable and decided to impose fines on Plaintiff. (Compl. ¶ 58). Plaintiff alleges that the Board's unanimous decision to proceed with assessing fines to Plaintiff and attendant eviction of the tenant's service dog was made by Defendant Smith, Defendant Vicenzi and Mr. Mohwinkel. (Compl. ¶ 58).

On February 20, 2014, Plaintiff provided Defendant AVCA with a letter from the tenant's alleged Board-approved doctor, Dr. Dewayne Niebur. Plaintiff alleges that Board members Defendant Smith, Defendant Vicenzi, and Mr. Mohwinkel deemed the doctor's letter insufficient. (Compl. ¶ 60). Plaintiff further alleges that Defendant AVCA, acting through Defendant Smith, Defendant Vicenzi, and Mr. Mohwinkel, directed Plaintiff to request a second, more specific doctor's note from his tenant. (Compl. ¶ 61). In response, Plaintiff's tenant disclosed her fear that the Board's ongoing demands and harassment would trigger her seizure disorder, and as a result, she needed to break her lease and leave. (Compl. ¶ 61).

On March 7, 2014, the Board's attorney sent a letter providing that the Board was willing to allow the tenant to maintain the presence of her dog until April 1, 2014, but that the fine structure of $50 per day would still apply until the dog was removed from the premises. (Compl. ¶ 63). On March 11, 2014, a second letter from Dr. Niebur was provided to the Board's attorney, which stated the nature of tenant's seizure disorder and the related need for her service animal. (Compl. ¶ 64). On June 5, 2014, more than two months after Plaintiff's tenant vacated the unit, the Board, Defendant Smith, Defendant Vicenzi, and Mr. Mohwinkel executed "The Aspen View Condominium Association, Inc. Board of Managers Resolution Concerning

Fines and Fees Assessed against Unit 201" ("Resolution"). (Compl. ¶ 65).

In conjunction with the Resolution, Plaintiff alleges that the Board, Mr. Mohwinkel, Defendant Smith and Defendant Vicenzi, assessed fines in the amount of $1,450.00 against Plaintiff on the basis that his tenant's service dog "was maintained and kept in Unit 201 without providing reliable documentation of the tenant's disability related need for as assistance dog from February 20, 2014, until at least March 31, 2014." (Compl. ¶ 67). The Board, through Defendant Smith, Defendant Vicenzi, and Mr. Mohwinkel assessed additional costs in the amount of $4,234.00 against Plaintiff for attorney fees; the Board declared such fines, fees and costs to "constitute a statutory lien on the unit" owned by Plaintiff. (Compl. ¶ 67). Additionally, Plaintiff alleges that the Board, at the instruction of Defendant Smith, Defendant Vicenzi, and Mr. Mohwinkel, assessed a lien in the amount of $5,684.00 and filed it against Plaintiff's property in Pitkin County on July 9, 2014. (Compl. ¶ 68).

Plaintiff's First Amended Complaint and Jury Demand (ECF No. 84) alleges claims of discrimination in violation of 42 U.S.C. §§ 3601, *et seq.*; retaliation and interference in violation of 42 U.S.C. § 3617; and interference of contract in violation of 42 U.S.C. § 3617, against all Defendants, including Defendant Smith, Defendant Vicenzi and Defendant FCP LLC.

Individual defendants Smith and Vicenzi seek to be dismissed from the case, arguing that Plaintiff failed to make any allegations of any actions by them to support any individual claims. (ECF No. 94). Defendant Aspen Snowmass, LLC d/b/a First Choice Properties & Management seeks to be dismissed from the case, arguing that it cannot be held liable for alleged violations

that took place before it began managing the Association. (ECF No. 92).

## III. ANALYSIS

### A. Standard of Review

The motions seek dismissal of certain claims under Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Under that rule, the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan–Arapahoe, LLP v. Board of County Com'rs of County of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011).

 Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully. *Id.* Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ Thus, "a plaintiff must include enough facts to 'nudge[ ] [his] claims across the line from conceivable to plausible.'" *Dennis v. Watco Cos., Inc.*, 631 F.3d 1303, 1305 (10th Cir. 2011) (quotation omitted). Conclusory allegations are not sufficient to survive a motion to dismiss. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

### B. The Merits of Defendant's Arguments

#### i. Plaintiff has sufficiently pled a plausible claim against both Vicenzi and Smith

■ "An action [under the FHA] is essentially an action in tort." *See Chavez v. Aber*, 122 F.Supp.3d 581, 593 (W.D.Tex.,2015) (citing *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979)). Under principals of agency law, "[a]n agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal." *Id.* (citing Restatement (Second) of Agency § 411 (1958)); *see also Fair Hous. Res. Ctr., Inc. v. DJM's 4 Reasons Ltd.*, 499 Fed.Appx. 414, 416 (6th Cir.2012) (finding that "prohibitions of [FHA] applied to [defendant] individually as well as to his company"). As a result, "an agent who assists his principal in committing a [violation of the FHA] is himself liable as a joint tortfeasor." *Dillon*, 597 F.2d at 562; *see also Miller v. 270 Empire Realty LLC*, No. 09-

CV-2857 (RJD)(RER), 2012 WL 1933798, at *5 (E.D.N.Y. Apr. 6, 2012) ("If [apartment superintendent] refused to perform repairs on the apartment because of [plaintiff's] disability, whether or not under direction from the [corporate owners], he too can be held liable for violating the FHA."); *Wiesman v. Hill*, 629 F.Supp.2d 106, 112 (D.Mass.2009) (finding sufficient allegations to state claim for individual liability of apartment manager for disability discrimination under the FHA).

■ Plaintiff asserts federal claims for violations of the Fair Housing Act. For such claims, "courts have found that directors who participate in, authorize, or ratify the commission of a civil rights or fair housing tort may be held individually liable." *Fielder v. Sterling Park Homeowners Ass'n*, 914 F.Supp.2d 1222, 1227 (W.D.Wash. 2012). At least one court has held that a claim may be maintained against individual directors even where defendants' act lack discriminatory intent. *See United States v. Tropic Seas, Inc.*, 887 F.Supp. 1347, 1365 (D.Haw.1995) ("a corporation's officers and directors may be held individually liable for their failure to ensure the corporation's compliance.... This is so even where the individual director or officer did not actively participate in the alleged discrimination and did not subjectively intend to discriminate against the complainant.") (internal citations omitted).

Here, Plaintiff alleges that the premises are governed by the bylaws, rules and policies promulgated by AVCA's Board, and that acts and omissions as they apply to AVCA were the acts and omissions of Board members, including Defendant Smith and Defendant Vicenzi. (Compl. ¶¶ 28, 29). Additionally, Plaintiff alleges that Defendant Smith and Defendant Vi-

cenzi participated in implementing AVCA's new service animal policy and requested information regarding the tenant's disability and disability-related need for the service dog. (Compl. ¶¶ 47, 48). Pursuant to AVCA's new service animal policy, the Board had complete discretion on whether to grant such an accommodation. (*See* Compl. ¶ 48).

Plaintiff alleges that Defendant Vicenzi participated in interviewing the tenant at the January 8, 2014 meeting between Board members, Plaintiff and his tenant. (Compl. ¶ 49). Moreover, Plaintiff alleges that Defendant Smith and Defendant Vicenzi personally participated in denying the tenant's accommodation request, deeming the tenant's documentation as insufficient, and deciding to impose fines on Plaintiff until the service dog was removed from the premises. (Compl. ¶¶ 58–61). Finally, Plaintiff alleges that despite receiving two letters from tenant's doctor confirming her disability and that she "benefits greatly from the assistance of her dog," Defendant Smith and Defendant Vicenzi participated in the Board's decision to assess fines on Plaintiff and filed a lien against Plaintiff's property, in violation of the FHA. (Compl. ¶¶ 66–70).

I find that these allegations are sufficient under *Twombly* and *Iqbal* to deny the motion to dismiss individual defendants Jack Smith and Heather Vicenzi.

### ii. Plaintiff has sufficiently pled a plausible claim against Aspen Snowmass, LLC, d/b/a First Choice Properties & Management

It is has long been established that the FHA provides for vicarious liability. *Meyer v. Holley*, 537 U.S. 280, 123 S.Ct. 824, 828, 154 L.Ed.2d 753 (2003). This vicarious liability is based on tradi-

tional theories of agency law. *See id.* at 830–31 (rejecting the Ninth Circuit's contention that the FHA called for "more extensive vicarious liability-that the Act went well beyond traditional principles."). "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for the acts of their agents or employees in the scope of their authority or employment." *Id.* at 829 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) ("An employer may be liable for the negligent and intentional torts committed by an employee within the scope of his or her employment"); *New Orleans, M. & C.R. Co. v. Hanning*, 82 U.S. 15 Wall. 649, 21 L.Ed. 220 (1872) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not know of the acts complained of"); *see Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963, 967 (7th Cir.1986) (" 'respondeat superior' ... is a doctrine about employers ... and other principals")). *See also United States v. Northside Realty Associates, Inc.*, 474 F.2d 1164, 1168 (5th Cir.1973) (holding that imputing liability to a corporation when an executive "acted within the scope of his duties" and "with the intention of benefiting the corporation" was appropriate under the FHA).

Here, Plaintiff has alleged that Defendant FCP LLC is the successor company of FCP. (Compl. 23). Plaintiff alleges that, at all relevant times, the property has been managed by either FCP or its successor Defendant FCP LLC. (Compl. ¶ 22). The Tenth Circuit has applied successor liability to claims of discrimination, and thus, it is possible for successor employers to be held liable for the discriminatory

practices of their predecessors. *Trujillo v. Longhorn Mfg. Co., Inc.*, 694 F.2d 221, 224 (10th Cir. 1982) (Determining successor liability in the context of Title VII claims). Generally, where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, unless one of four exceptions applies. *W. Texas Refining & Dev. Co. v. Commr. of Internal Revenue*, 68 F.2d 77, 81 (10th Cir. 1933). A successor corporation may be liable for their predecessor's discriminatory practices if: (1) there is an express or implied assumption of liability; (2) the transaction results in a merger of the two corporations; (3) the purchaser is a mere continuation of the seller; and (4) the transfer is for the fraudulent purpose of escaping liability. *Id.* [T]he "nature and extent of [successor] liability is subject to no formula, but must be determined upon the facts and circumstances of each case." *Trujillo*, 694 F.2d at 225 (quotation omitted). "[S]uccessor liability is not automatic but should be determined on a case by case basis." *Id.*

Plaintiff alleges that Defendant FCP LLC currently manages Aspen View Condominiums, and that FCP, its predecessor, dissolved without notice to Plaintiff on October 7, 2015. (Compl. ¶¶ 23, 24). Defendant FCP LLC argues, that all of Plaintiff's allegations occurred before the assets of Defendant Aspen Snowmass Care, Inc. d/b/a First Choice Properties & Management, Inc., were sold to the new management company, Aspen Snowmass, LLC d/b/a First Choice Properties & Management. (ECF No. 92, at 2). Defendant FCP LLC argues that "[s]imply because [ ] [Defendant FCP LLC] continues to manage Aspen View Condominium Association does not create any liability" on "claims against the prior management during a period of time when" Defendant FCP LLC was not even in existence, and "had no connection to the Plaintiff, the Association, or the other Defendants." (ECF No. 92, at 3).

Whether Defendant FCP LLC can be held liable for the alleged acts of its predecessor depends on the facts of the case. I find that Plaintiff's allegations are sufficient under under *Twombly* and *Iqbal* to deny the motion to dismiss Defendant FCP LLC.

## IV. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss First Amended Complaint Against Jack Smith Individually and Heather Vicenzi Individually (ECF No. 94) and the Motion to Dismiss Claims Against Aspen Snowmass, LLC D.B.A. First Choice Properties & Management, a Foreign Limited Liability Company (ECF No. 92), are **DENIED.**