**Geraldine Norma JACKSON, Plaintiff,**

v.

**LOCKIE CORPORATION, a Colorado corporation, d/b/a/ Firstat Nursing Services, and Port Rush, Inc., a Minnesota corporation, d/b/a First Nursing Services, Defendants.**

**No. Civ.A. 98–D–575.**

United States District Court, D. Colorado.

Aug. 25, 2000.

Geraldine Jackson, Denver, CO, plaintiff pro se.

James R. Florey Jr., Englewood, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BOLAND, United States Magistrate Judge.

The sole remaining defendant, Port Rush, Inc. ("Port Rush"), has filed an Amended Motion for Summary Judgment on the plaintiff's claims of discrimination and retaliation under 42 U.S.C. §§ 2000e–2

and 3 (Title VII). The motion is fully briefed, and I held oral argument on August 8, 2000. The Amended Motion for Summary Judgment is GRANTED.[1]

### I.

The following facts are undisputed or, if disputed, are viewed most favorably for the plaintiff:

The plaintiff was employed as a nurse by Firstat Nursing Services. Complaint, ¶¶ 9.

The plaintiff's employment with Firstat Nursing Services was terminated on September 13, 1994. *Id.* The plaintiff alleges that her termination constitutes discrimination based on race and age, and retaliation, all in violation of Title VII of the Civil Rights Acts. *Id.* at ¶ 5.

The plaintiff's Complaint named two defendants—Lockie Corporation, a Colorado corporation;[2] and Port Rush, Inc., a Minnesota corporation. *Id.* at ¶ 2. Throughout the period of the plaintiff's employment and until November 7, 1994, Lockie Corporation did business under the tradename Firstat Nursing Services. Affidavit of William R. Johnson, ¶ 3, and attached Asset Purchase Agreement at Recital A.

On November 7, 1994, Port Rush purchased certain assets from Lockie Corporation. Affidavit of William R. Johnson, ¶ 3. The purchase is evidenced by an Asset Purchase Agreement, *id.,* which provides at paragraph 5(*l* ):

> *Franchise Rights.* Seller [Lockie Corporation] shall arrange for the immediate termination of its franchise rights with Firstat of America, Inc. Buyer [Port Rush] shall obtain all franchise

---

1. My authority to decide this motion is derived from 28 U.S.C. § 636(c)(1); the Notice of Right to Consent to Final Determination of Dispositive Motions By a United States Magistrate Judge Pursuant to 28 U.S.C. § 636(c), filed April 6, 2000; and the Consents to Final Determination of dispositive Motions By a United States Magistrate Judge Pursuant to 28 U.S.C. § 636(c), filed by Port Rush on

April 10, 2000, and by the plaintiff on May 4, 2000.

2. Lockie Corporation never was served with the Complaint in this action and was dismissed, without prejudice, by order entered May 4, 2000.

rights and rights to the tradename "Firstat Nursing Services, Inc." directly from Firstat of America, Inc. From and after the Closing Date [November 7, 1994], Seller shall no longer have or use the trade name "Firstat Nursing Services" or any similar name.

The plaintiff, who was terminated September 13, 1994, prior to the effective date of the Asset Purchase Agreement, never was employed by Port Rush. Affidavit of William R. Johnson, ¶ 6.

## II.

The plaintiff was acting *pro se* when she filed the Complaint. Shortly thereafter she obtained counsel, who represented her until he was granted leave to withdraw on July 22, 1999. The plaintiff has proceeded *pro se* since then. In deciding the motion for summary judgment, I am mindful of the plaintiff's *pro se* status. At the time Port Rush's Amended Motion for Summary Judgment was filed (April 15, 1999), and at the time of the plaintiff's response (May 5, 1999), however, the plaintiff was represented by counsel.

The purpose of a summary judgment motion is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Rule 56, Fed. R.Civ.P., provides that summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file, together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing that there are issues of material fact to be determined at trial. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). The existence of disputed material facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

Where, as here, the moving party is the defendant, the operative inquiry is, based on all the evidence submitted, whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff and drawing all reasonable inferences in the plaintiff's favor, a reasonable jury could return a verdict for the plaintiff. *Id.* at 250–52, 106 S.Ct. 2505; *Mares*, 971 F.2d at 494.

## III.

In order to establish a prima facie case under Title VII, the plaintiff must prove, among other things, that Port Rush was her employer. *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir.1998). The undisputed facts in this case establish two obstacles which the plaintiff must overcome to make that showing. First, it is undisputed that the plaintiff was terminated from her employment on September 13, 1994, nearly two months before Port Rush purchased assets from Lockie Corporation. Second, it also is undisputed that Port Rush never was the plaintiff's immediate employer.

The plaintiff, however, argues that Port Rush is a successor employer that may be held liable for the discriminatory practices of its predecessor, Lockie Corporation, citing in support *Trujillo v. Longhorn Manu-*

*facturing Co., Inc.*, 694 F.2d 221, 224 (10th Cir.1982).

In the *Trujillo* case, the Tenth Circuit Court of Appeals endorsed the ruling of the Sixth Circuit in *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir.1974). *MacMillan* holds that one who acquires and operates the business of an employer found guilty of unfair employment practices in violation of Title VII may be held responsible for remedying his predecessor's unlawful conduct. *Id.* at 1090. The *MacMillan* decision emphasizes, however, "that the liability of a successor is not automatic, but must be determined on a case by case basis." *Id.* at 1091.

The court in *MacMillan* identified nine factors which it determined are relevant in determining whether to impose Title VII liability on a successor employer:

> 1) Whether the successor company had notice of the charge, 2) the ability of the predecessor to provide relief, 3) whether there has been a substantial continuity of business operations, 4) whether the new employer uses the same plant, 5) whether he uses the same or substantially the same work force, 6) whether he uses the same supervisory personnel, 7) whether the same jobs exist under substantially the same working conditions, 8) whether he uses the same machinery, equipment and methods of production and 9) whether he produces the same product.

*Id.* at 1094.

The nine factors identified in *MacMillan* subsequently have been refined into a three criteria test. In *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986), for example, the Seventh Circuit Court of Appeals explained:

> We continue to find helpful criteria articulated in *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.*, . . . : (1) whether the successor employer had prior notice

of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor.

*Accord Coleman v. Keebler Co.*, 997 F.Supp. 1094, 1098–99 (N.D.Ind.1998). The remaining six factors identified in *MacMillan* provide a foundation for analyzing the third criterion—whether there is sufficient continuity of operations between the successor and predecessor to justify successor liability. *Wheeler*, 794 F.2d at 1236 n. 7; *Bigsby v. Park Plaza of Oshkosh, Inc.*, 1998 WL 466636 *13 (E.D.Wis.1998); *Coleman*, 997 F.Supp. at 1099.

Of the three criteria to be considered, the first two—(1) notice of the claim to the successor prior to the purchase of assets and (2) the ability of the predecessor to provide the relief requested by the plaintiff—are the most important. As the court stated in *Coleman:*

> The first two factors are "critical," because it would be "grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief."

997 F.Supp. at 1099 (citing *Musikiwamba v. ESSI Inc.*, 760 F.2d at 740, 752 (7th Cir.1985), and *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir.1986)).

**IV.**

Under facts nearly identical to those presented here, a court in this district granted summary judgment dismissing the plaintiff's Title VII claims, stating:

> I conclude that the lack of notice to Canyon [the successor owner] of plaintiff's claim of discrimination and harassment is dispositive. The successor companies in both *Trujillo* and *MacMillan* had notice of the plaintiff's claim when they entered into purchase agreements. Indeed, the court in *Trujillo* specifically

relied upon the defendant's notice to justify its decision against an argument of undue hardship because the defendant had an opportunity to contract around its liability. . . . Imposing liability here, where Canyon had no notice of the charge would be to transform Title VII into a strict liability statute akin to CERCLA. I cannot conclude that the Tenth and Sixth Circuits intended to stretch Title VII so far.

*Scott v. Sopris Imports, Ltd.*, 962 F.Supp. 1356, 1360 (D.Colo.1997).

In this case, as in *Scott*, there is no evidence that Port Rush knew or with the exercise of reasonable diligence could have known prior to its purchase of assets from Lockie Corporation of the plaintiff's Title VII claims. *See Coleman*, 997 F.Supp. at 1099 ("[A] successor who exercises due diligence in its purchase and yet fails upon inquiry to uncover evidence of the plaintiff's lawsuit prior to the purchase will not be found to have notice"). To the contrary, the Asset Purchase Agreement between Port Rush and Lockie Corporation contains the following representation and warranty from Lockie:

> There are no known claims against Seller by employees or former employees for unpaid wages, wrongful termination, accidental injury or death, sexual harassment or discrimination.

Affidavit of William R. Johnson, ¶ 3, and attached Asset Purchase Agreement at ¶ 5(i). Moreover, the plaintiff admits that she did not file a claim of discrimination with the E.E.O.C. until 1995, after the purchase of assets by Port Rush. Plaintiff's Response to Defendant Port Rush, Inc.'s Amended Motion for Summary Judgment, at ¶ 3. And finally, the plaintiff conceded at the hearing on the motion for summary judgment that she first notified her employer of her claims of discrimination and retaliation on November 10, 1994, again after the purchase of assets by Port Rush.

Nor has the plaintiff presented any evidence suggesting that Lockie Corporation, had she pursued her claims against it,[3] would not have been able to provide full relief. *See Scott*, 962 F.Supp. at 1360 (holding that the plaintiff, in opposing a motion for summary judgment, bears the burden of presenting evidence to establish a genuine issue of fact concerning the elements necessary to prove successor liability). The plaintiff is not seeking reinstatement or injunctive relief.

I find, consistent with the decisions in *Scott* and *Coleman*, that the plaintiff's failure to come forward with any evidence that Port Rush had or reasonably should have had knowledge of the plaintiff's Title VII claims, in combination with the absence of any evidence tending to establish that Lockie Corporation could not provide relief if liability were established, precludes the plaintiff from going forward against Port Rush on her theory that Port Rush is liable as a successor employer for the allegedly unlawful acts of its predecessor, Lockie Corporation. *Scott*, 962 F.Supp. at 1360; *Coleman*, 997 F.Supp. at 1099.

Although not necessary to my determination of the case, I note finally that the plaintiff has failed to present sufficient evidence to establish a question of fact concerning whether Port Rush has continued the business operations of Lockie Corporation. Although Port Rush is engaged in the home health care business under the tradename of Firstat Nursing Services, as was its successor Lockie Corporation, there is no evidence that Port Rush and Lockie Corporation have overlapping management, directors, or ownership;[4] no evidence of the use of the same or substantially the same work force; no evidence of

---

3. As noted above, the plaintiff failed to serve Lockie Corporation, and the claims against it have been dismissed without prejudice. *Supra*, at n. 2.

4. *See Scott*, 962 F.Supp. at 1358, explaining that ordinarily the question of whether the purchaser of assets is a mere continuation of the seller turns on whether "the selling and buying corporations are essentially the same entity" (i.e., common directors, shareholders, etc.) . . . .

a continuation of the same or substantially the same supervisory personnel; and no evidence that the same jobs exist under substantially the same working conditions. Here, as in *Scott:*

> Similarities in the general nature of business of successor and predecessor alone cannot justify successor liability where the successor did not have notice, the predecessor is able to pay, the successor employees different managers, and there is no evidence of continuing discrimination by the successor.

962 F.Supp. at 1360.

The plaintiff has failed to come forward with any evidence to support its claim that Port Rush is liable as a successor employer for the alleged discrimination and retaliation by its predecessor, Lockie Corporation. Accordingly the Amended Motion for Summary Judgment by defendant Port Rush is GRANTED, and the plaintiff's claims against Port Rush are DISMISSED.