2004 UT App 484

**Pat DECIUS, Diane Gallegos, Lorraine Mottes, and Ila Cash, Plaintiffs and Appellants,**

v.

**ACTION COLLECTION SERVICE, INC., an Idaho corporation, Defendant and Appellee.**

**No. 20030925-CA.**

Court of Appeals of Utah.

Dec. 23, 2004.

Rehearing Denied Jan. 27, 2005.

---

Benjamin C. Rasmussen, Brad C. Smith, H. Thomas Stevenson, Stevenson & Smith PC, Ogden, for Appellants.

Barbara K. Polich and Jeffrey J. Droubay, Parsons Behle & Latimer, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

JACKSON, Judge:

¶1 Pat Decius, Diane Gallegos, Lorraine Mottes, and Ila Cash (collectively, Plaintiffs) appeal the trial court's grant of summary judgment in favor of Action Collection Service, Inc. (Action). We affirm.

## BACKGROUND

¶2 In February 1998, Plaintiffs filed claims of age discrimination with the Equal Employment Opportunity Commission (EEOC) against their former employer, Allstate Credit and Collections (Allstate).[1] In December 1998, after receiving right-to-sue letters from the EEOC, Plaintiffs brought suit in federal district court against Allstate. Their complaint alleged violations of the Age Discrimination in Employment Act (ADEA) and intentional infliction of emotional distress.

¶3 Attorneys for Plaintiffs and Allstate exchanged letters regarding a settlement. Plaintiffs subsequently learned that Action had purchased all of Allstate's accounts six months earlier. Action and Allstate had been competitors, though Action was much larger. Action had twenty times more clients than Allstate.

¶4 In federal court, Plaintiffs moved to compel settlement against Allstate, arguing that a letter from Allstate's then-attorney could be construed as a settlement agreement. The federal court found that Plaintiffs and Allstate had agreed to a settlement. Accordingly, the court entered a judgment against Allstate.

¶5 Plaintiffs next brought an action in state court for a declaratory judgment that Action is liable as a successor to Allstate. Through discovery, Plaintiffs learned that after the transaction, Action hired some members of Allstate's staff, including Allstate's former president but that Action and Allstate had no directors or officers in common. Prior to the asset purchase, Action had purchased options to buy all of Allstate's shares,

but after its "due diligence" revealed significant shortfalls in Allstate's clients' trust accounts, Action did not consummate the stock purchase. Instead, Action gave Allstate a potentially forgivable loan and an indemnity against the shortfalls in the trust accounts in exchange for some of Allstate's assets. Action also assumed some of Allstate's equipment leases, but Action expressly refused to assume any of Allstate's other liabilities. Action moved Allstate's assets to a new office and sent letters to Allstate's former clients stating that Action had purchased Allstate's accounts. Action also kept and used Allstate's phone number. Plaintiffs do not allege that Action had any knowledge of Plaintiffs' claims prior to the asset purchase.

¶6 In response to Plaintiffs' complaint, Action moved for summary judgment. The state trial court ruled that under Utah law, Action is not a successor to Allstate and, accordingly, granted Action's motion for summary judgment. Plaintiffs appeal.

## ISSUE AND STANDARD OF REVIEW

¶7 We review the trial court's grant of summary judgment for correctness. See Macris & Assocs., Inc. v. Neways, Inc., 1999 UT App 230, ¶5, 986 P.2d 748, aff'd, 2000 UT 93, 16 P.3d 1214. Thus, we determine whether the trial court correctly ruled that Action did not succeed to liability for Plaintiffs' claims.

## ANALYSIS

¶8 " '[W]here one company sells or otherwise transfers all its assets to another company[,] the latter is not responsible for the debts and liabilities of the transferor.' " Macris, 1999 UT App 230 at ¶15, 986 P.2d 748 (quoting Florom v. Elliott Mfg., 867 F.2d 570, 575 n. 2 (10th Cir.1989)). But, four well-settled exceptions qualify that rule:

"(1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a contin-

1. For ease of understanding, we consider Retrieval Services Inc. and Allstate, a dba of Retrieval, synonymous.

uation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts." *Id.* (quoting *Florom,* 867 F.2d at 575 n. 2.) The second exception, the "de facto merger," considers whether the business operations and management continued and requires that the buyer paid for the asset purchase with its own stock. *See Shannon v. Samuel Langston Co.,* 379 F.Supp. 797, 801 (W.D.Mich. 1974). In contrast, the third exception, the "mere continuation," considers not whether the "business operation[s]" continued, but whether the "corporate entity" continued. *Polius v. Clark Equip. Co.,* 802 F.2d 75, 86 (3d Cir.1986) (Mansmann, J., dissenting) (quoting *Travis v. Harris Corp.,* 565 F.2d 443, 447 (7th Cir.1977)). "A continuation demands 'a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer.'" *Id.* (quoting *Travis,* 565 F.2d at 447).

██ ¶ 9 Plaintiffs assert that the "mere continuation" exception applies in this case. But, "[o]rdinarily the [mere continuation] exception ... is limited to situations where the selling and buying corporations are essentially the same entity (i.e., common directors, shareholders, etc.) operating under different names." *Scott v. Sopris Imps. Ltd.,* 962 F.Supp. 1356, 1358 (D.Colo.1997). In fact, the mere continuation exception traditionally requires a continuation of ownership and control. *See A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.,* 172 Ariz. 324, 836 P.2d 1034, 1039–40 (Ct.App.1992); *Alcan Aluminum v. Electronic Metal Prods., Inc.,* 837 P.2d 282, 283 (Colo.Ct.App.1992); *Continental Ins. Co. v. Schneider, Inc.,* 810 A.2d 127, 134–35 (Pa.Super.Ct.2002); *Cashar v. Redford,* 624 P.2d 194, 196, 28 Wash.App. 394 (1981). In this case, Allstate's ownership and control did not continue in Action, so Plaintiffs urge us to adopt an expansion of the mere continuation test.

¶ 10 To date, Utah has not ventured past the traditional bounds of the mere continuation test. A few other states have, though.

Among them, Michigan has modified the mere continuation test, eliminating the requirement of shareholder continuity (so that cash as well as stock transactions are included). *See Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 244 N.W.2d 873, 883 (1976). The *Turner* test still requires a continuation of the corporate entity, to the extent that the corporate buyer must retain the target's "key personnel" and "h[o]ld itself out to the world as the effective continuation of the transferor." *Id.* at 884.[2]

¶ 11 Federal courts have also modified the traditional successor liability law in some types of cases. The United States Supreme Court announced a more expansive test in cases related to labor law. *See Golden State Bottling Co., Inc. v. NLRB,* 414 U.S. 168, 171–74, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *NLRB v. Burns Int'l Sec. Servs.,* 406 U.S. 272, 281–91, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 550, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). And, some federal circuit courts have used the expanded successor liability test in discrimination-related cases. *See Trujillo v. Longhorn Mfg. Co., Inc.,* 694 F.2d 221, 224–25 (10th Cir.1982); *EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1091–92 (6th Cir.1974).

¶ 12 Plaintiffs argue that the trial court erred in using the state successor liability law, or alternately, that we should apply Michigan's *Turner* expansion of the mere continuation doctrine. We are spared the need to determine which law should apply in this case because Action would not be liable under either.

I. State Law and the *Turner* Doctrine

██ ¶ 13 Because Action did not continue Allstate's ownership and control, Action is not liable under the traditional mere continuation doctrine, and this case presents an inappropriate situation to expand the mere continuation test. Only a minority of jurisdictions have adopted the *Turner* test or allowed for liability when, as here, there is no continued ownership. *See McCarthy v. Lit-*

---

2. California's "product line" approach represents another, and a more dramatic, departure from traditional successor liability law, but Plaintiffs have not argued that the product line approach should apply in this case.

ton Indus., Inc., 410 Mass. 15, 570 N.E.2d 1008, 1013 n. 6 (1991). Moreover, this minority has exclusively applied the Turner approach in strict liability cases, particularly products liability. See, e.g., Johnston v. Amsted Indus., Inc., 830 P.2d 1141 (Colo.Ct.App. 1992); Turner, 244 N.W.2d at 875.

¶ 14 Courts have posited three reasons for expanding successor liability in products liability cases. First, the buyer company is in a better position to bear the expense of the injury than the victim. See Johnston, 830 P.2d at 1145. Second, a manufacturer buyer is able to spread the cost of the injury to future consumers. See Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 431 A.2d 811, 817 (1980). And third, because a manufacturer buyer profits from the predecessor's goodwill and reputation, it is unfair to allow the buyer to succeed to the seller for purposes of sales but not liability. See id.; Turner, 244 N.W.2d at 882.

¶ 15 The rationale that supports expanding successor liability in strict liability case is inapplicable in this case. While the notion of spreading costs exclusively on the basis of relative wealth holds a certain Marxist charm, "the legislature is in a better position to make [such a] broad public policy decision[ ]." Fish v. Amsted Indus., Inc., 126 Wis.2d 293, 376 N.W.2d 820, 828 (1985). Also, this case deals with service providers, not manufacturers, and service providers bear more responsibility for their own reputations and goodwill than successor manufacturers. Hence, Action would not unfairly benefit from Allstate's goodwill and reputation in the same way that a successor manufacturer does.[3]

¶ 16 Moreover, strict liability permits a plaintiff to forgo proving causation, which is otherwise required in tort causes. The expansion of successor liability is in line with that element of strict liability—a plaintiff does not need to prove that the successor caused the injury. In this case, though, Plaintiffs' claims are founded on intentional infliction of emotional distress and ADEA claims, and both of those claims require proof of causation. Thus, even assuming that an expansion of the mere continuation test would make sense in a strict liability case, it does not make sense in other types of cases, including this one.

¶ 17 More importantly, Plaintiffs have not shown what Turner requires: a continuation of the corporate identity. Plaintiffs' evidence that the identity continued is: (1) Action employed Allstate's former president; (2) Action used Allstate's phone number; (3) Action remained briefly at Allstate's location; and (4) when a paralegal working for Plaintiffs called Allstate's phone number after the asset purchase transaction, the receptionist said that everything was the same.[4] As to the first point, Turner does consider whether the successor retained the predecessor's "key personnel." Turner v. Bituminous Cas. Co., 397 Mich. 406, 244 N.W.2d 873, 884 (1976). But, while Allstate's president is undoubtedly "key" to Allstate, this requirement implies that the key personnel would be retained in key positions, not just as corporate cogs. Action hired Allstate's president as, at best, a mid-level manager, not an officer or director. For example, if McDonald's Corporation purchased the assets of a neighborhood hamburger stand, but employed the stand's owner to sell McDonald's burgers from the stand, that would not amount to a continuation of corporate identity. Plaintiffs' other evidence on this point is similarly unpersuasive, particularly in light of the fact that Action did not represent itself as a continuation of Allstate to the clients. The vast difference in the size of the corporations also indicates that this represents a corporate buyout, not a continuation.

¶ 18 Accordingly, we decline to expand successor liability in this case. We hold that Action would not be liable to the Plaintiffs under Utah's successor liability doctrine because Action is not a continuation of Allstate.

## II. Federal Law

■ ¶ 19 Following the Supreme Court's announcement of the expansion of successor

---

3. Then, too, to speak of the "goodwill" of a collection agency may be an oxymoron.

4. This tactic appears to violate Utah Rules of Professional Responsibility 4.2. See Utah R. Prof. Resp. 4.2.

liability in labor cases, the Sixth Circuit developed a nine-factor assessment to determine whether to apply successor liability in a Title VII suit. *See EEOC v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1094 (6th Cir.1974). The Tenth Circuit has adopted this assessment. *See Trujillo v. Longhorn Mfg. Co.,* 694 F.2d 221, 224 (10th Cir.1982); *Scott v. Sopris Imps.,* 962 F.Supp. 1356, 1358 (D.Colo.1997). And, the Seventh Circuit distilled the Sixth Circuit's nine-factored pastiche into three criteria. *See Wheeler v. Snyder Buick, Inc.,* 794 F.2d 1228, 1236 (7th Cir.1986). *Wheeler's* three criteria emphasized *MacMillan's* two most important factors and combined the remainder into the last criteria. *See id.* A district court in the Tenth Circuit has appropriated *Wheeler's* three criteria for the analysis of this question.[5] *See Jackson v. Lockie Corp.,* 108 F.Supp.2d 1164, 1167 (D.Colo.2000). Hence, we analyze

> "(1) whether the successor employer had prior notice of the claim against the predecessor; (2) whether the predecessor is able, or was able prior to the purchase, to provide the relief requested; and (3) whether there has been a sufficient continuity in the business operations of the predecessor and successor."

*Jackson,* 108 F.Supp.2d at 1167 (quoting *Wheeler,* 794 F.2d at 1236).

¶ 20 Regarding the first factor, Plaintiffs filed their complaint against Allstate after Action purchased Allstate's assets, and Plaintiffs have presented no evidence that Action had notice of the claim prior to the transaction. Rather, Plaintiffs argue that we should impute notice to Action because after the transaction, Action employed Allstate's former president and other high-ranking employees. However, no employee, officer, director, or shareholder in Allstate was ever an officer or director in Action. Even assuming that agency principles would permit us to impute notice from a nonexecutive who was employed after the asset purchase transaction, this is not the notice that the *Trujillo, Jackson,* or *Scott* courts envisioned. In all three cases, the court was clearly concerned with whether the buyer company had knowledge of the claims *before* the transaction. *See Trujillo,* 694 F.2d at 223, 226; *Jackson,* 108 F.Supp.2d at 1168; *Scott,* 962 F. Supp. at 1360. Indeed, for the *Scott* court, the lack of notice was "dispositive" because to hold the buyer liable for charges of which it had no prior notice would "transform Title VII into a strict liability statute akin to CERCLA." 962 F. Supp. at 1360.

¶ 21 The second factor, whether the plaintiff had shown that the predecessor was not able to provide the requested relief, also mitigates against successor liability. While Plaintiffs have shown that Allstate did not renew its license to do business, they have not shown that it has distributed its assets to its shareholders or that they would be unable to attain relief from the shareholders by piercing Allstate's corporate veil. We agree with the *Jackson* court that these factors are " ' "critical," because it would be "grossly unfair, except in the most exceptional circumstances, to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief." ' " 108 F.Supp.2d at 1167 (quoting *Coleman v. Keebler Co.,* 997 F.Supp. 1094, 1099 (N.D.Ind. 1998)) (other citation omitted).[6] Thus, Action

---

5. While federal district courts within the same circuit are not bound by horizontal stare decisis, *see generally, Snider v. Commercial Fin. Servs.,* 288 B.R. 890, 900 (N.D.Okla.2002), we can presume that such authority is so persuasive that another court would consider it. This is particularly likely because the facts in *Jackson v. Lockie Corp.,* 108 F.Supp.2d 1164 (D.Colo.2000), are so similar to the facts of this case. In *Jackson,* the plaintiff alleged that her employer discriminated against her in violation of Title VII of the Civil Rights Act. *See id.* at 1165. However, before she filed her complaint, another company purchased assets of her employer. *See id.* The buyer did not know of the plaintiff's claim before the pur-

chase, and the buyer and employer did not have common ownership or managerial control. *See id.* at 1168. Moreover, the plaintiff did not present evidence that the employer, though it had ceased doing business, would be unable to provide the monetary relief that she sought. *See id.* at 1165–66, 1168.

6. Because Plaintiffs have failed, as in *Jackson,* to meet these first two criteria, we need not analyze the third criteria, whether "there has been a sufficient continuity in the business operations." *Jackson,* 108 F.Supp.2d at 1167.

is not a successor to Allstate under federal law.

## CONCLUSION

¶ 22 We conclude that the trial court correctly granted Action's motion for summary judgment. Plaintiffs' claim for successor liability fails under state law because Action was not a continuation of Allstate, and this is an inappropriate case in which to enlarge the mere continuation doctrine. Moreover, Plaintiffs' claim would fail under federal law because Plaintiffs failed to show that Action had prior notice of the claim and that they could not obtain relief from Allstate or its shareholders. Accordingly, we affirm.

¶ 23 WE CONCUR: PAMELA T. GREENWOOD, Judge, and GREGORY K. ORME, Judge.