Timothy A. TABOR;  Debra J. Tabor;  Farmers Insurance Group,
Plaintiffs–Appellants,

v.

The METAL WARE CORPORATION, a Wisconsin corporation,
Defendant–Appellee,

and

Nesco American Harvest, a Minnesota corporation; David Dornbush, an individual; Uvalko Shopko Stores, Inc., a Minnesota corporation; Newco of Two Rivers, a Wisconsin corporation; Englewood Appliance, a Wisconsin corporation, Defendants.

Nos. 05–4155, 05–4156.

United States Court of Appeals, Tenth Circuit.

May 26, 2006.

tive symptoms of fibromyalgia must be considered. *Green–Younger,* 335 F.3d at 109.

Tim Dalton Dunn, John W. May, Dunn & Dunn, Salt Lake City, UT, for Plaintiffs–Appellants.

Brian C. Webber, Richards, Brandt, Miller and Nelson, Salt Lake City, UT, for Defendant–Appellee and Defendants.

## CERTIFICATION OF QUESTIONS OF STATE LAW

TYMKOVICH, Circuit Judge.

This products liability case is on direct appeal from the United States District Court for the District of Utah. Timothy and Debra Tabor sued Metal Ware and others for damages they alleged were caused by a defective product sold by American Harvest, a company whose assets Metal Ware acquired in 1997. The district court granted Metal Ware's motion for summary judgment, concluding that (1) Utah law would not impose strict liability on successor corporations for defective products sold by the predecessor corporation; (2) Utah law would, however, recognize an independent post-sale duty to warn by successor corporations; but (3) the Tabors could not establish as a matter of law that Metal Ware's failure to warn caused their damages. The Tabors appealed that decision.

Because the disposition of this appeal turns on important and unsettled questions of Utah's products liability law, we certify on our own motion, pursuant to Tenth Circuit Rule 27.1 and Utah Rule of Appellate Procedure 41, two issues to the Utah Supreme Court:

1. Does Utah law recognize an exception to the general rule of successor nonliability under the circumstances of this case?

2. Does Utah law impose on successor corporations a post-sale duty to independently warn customers of defects in products manufactured and sold by the predecessor corporation? If so, what factors should determine whether a successor has discharged that duty?

## I. Background

In the summer of 1996, the Tabors purchased an FD–50 food dehydrator manufactured by American Harvest. Prior to that purchase, in 1995, the United States Consumer Products Safety Commission (USCPSC) had instructed American Harvest to issue a recall notice for this product because of evidence that a faulty heating element was a fire hazard. American Harvest sold its assets in 1997 to a subsidiary corporation of Metal Ware, which began distributing the same line of dehydrators. In 2000, the Tabors' home burned to the ground in a fire they claimed was caused by the defective dehydrator. The Tabors also claimed that American Harvest did not notify them of any product defect or the recall at the time they purchased their dehydrator.

In a diversity action, the Tabors sued Metal Ware, American Harvest, and others, claiming among other things that Metal Ware was liable, as American Harvest's successor, for damages caused by the defective FD–50 and that it failed in its independent duty to warn them of the defective product.[1] The district court

---

1. Metal Ware formed two entities, NESCO/American Harvest and Newco of Two Riv-

ers, to consummate the asset purchase from

granted Metal Ware's summary judgment motion, finding that Utah followed a general rule of successor nonliability, subject to only four exceptions, none of which had been argued or applied in the case. The district court rejected the Tabors' claim that Utah would adopt additional exceptions, the "product line" and "continuity of enterprise" doctrines, and accordingly dismissed the claim. Aplt.App. at 64–65. The district court did find, however, that Utah law would impose an independent duty to warn on successor corporations. *Id.* at 76. Nonetheless, it concluded the Tabors could not establish as a matter of law that their damages were caused by Metal Ware's failure to warn and granted summary judgment. *Id.* at 119–24.

## II. Analysis

The Tabors' claims all involve unsettled questions of Utah products liability law. We discuss each question separately.

### A. Successor Liability

Utah law has yet to address the question of successor liability in the context of a products liability action. The general rule is that a successor corporation is not responsible for the torts of a predecessor entity. *See* Restatement (Third) of Torts § 12 (1998). The Utah Court of Appeals has recognized this general rule of successor nonliability, subject to four exceptions. In *Macris & Assocs. v. Neways, Inc.*, 986 P.2d 748 (Utah Ct.App.1999), a contract action, the court described the four exceptions where a successor potentially could be liable:

> [W]here one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts.

*Id.* at 752 (quoting *Florom v. Elliott Mfg.*, 867 F.2d 570, 575 n. 2 (10th Cir.1989)).

More recently the Utah Court of Appeals reiterated this general rule of successor nonliability in the employment context. In *Decius v. Action Collection Service, Inc.*, 105 P.3d 956 (Utah Ct.App.2005), the court elaborated on the third exception— mere continuation. Specifically, the court concluded under this exception that a "continuation demands 'a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer." *Id.* at 959. The court expressly declined to broaden the exception to encompass a wider range of successor liability where there was no continuing ownership by the same shareholders of the old company in the new company.

■ The Tabors nonetheless argue that Utah courts would expand liability to include Metal Ware since it continued to sell American Harvest's dehydrator products. They argue that Utah would recognize two broader exceptions in the products liability area. The first is the so-called "product line" exception which some courts have applied where a "corporation buys substantially all of the assets of a corporate manufacturer and thereafter continues essentially the same manufacturing operation." Aplt.App. at 63 (quoting *Case v. Paul Troester Maschinenfabrik*, 139 F.Supp.2d 428, 434 (W.D.N.Y.2001)). The

---

American Harvest. Those two entities merged into Metal Ware and no longer exist;

American Harvest is a separate corporation.

second is the "continuity of enterprise" exception, a variation of the product line theory. *See id.* Recognizing that no Utah court has adopted these exceptions, and that in any event the exceptions were the minority position in other jurisdictions,[2] the district court declined to apply them in this case and granted summary judgment in favor of Metal Ware.[3] *Id.* at 64–65.

Metal Ware argues on appeal that the district court correctly anticipated Utah law and that the Utah Supreme Court would continue to apply only the four recognized successor liability exceptions and that under the facts of this case the general rule of nonliability should apply.

In these circumstances, certification is appropriate. If Utah law would extend successor liability to Metal Ware merely because (1) it purchased American Harvest's assets, and (2) it continued selling the product line of food dehydrators, then the Tabors may have a claim against Metal Ware. On the other hand, if Utah law recognizes only the standard four exceptions to successor nonliability, the district court properly granted summary judgment.

Since Utah law is dispositive, we certify this issue to the Utah Supreme Court.

### B. Successor Duty to Warn

■ The district court also concluded that Utah law would impose an independent duty to warn on Metal Ware even though (1) American Harvest was aware of the defect before it sold the dehydrator to the Tabors and (2) the USCPSC had imposed a recall obligation on American Harvest. The court relied on a Tenth Circuit case construing Colorado law, *Florom v.*

*Elliott,* 867 F.2d 570 (10th Cir.1989). In *Florom,* while applying the general rule of successor nonliability, we recognized that in certain circumstances a successor corporation could be subject to an independent duty to warn.

> Succession alone does not impose a duty to warn the predecessor's customers of recently-discovered defects. Where such a duty arises, it stems from the existence of the relationship between the successor and the customers of the predecessor. "The successor corporation's liability stems not from its status as a successor, *but from its establishment of a relationship with the customer that imposes certain duties and responsibilities.*"

*Id.* at 577 (quoting *Polius v. Clark Equipment Co.,* 802 F.2d 75, 84 (3rd Cir.1986)) (other citations omitted) (emphasis added). To determine whether a special relationship exists on which liability may be based, "[t]he court must look at factors such as the succession to service contracts, coverage of the particular machine by a contract, service of that machine by the successor, and the successor's knowledge of the defect and of the machine owner's location." *Id.* Applying this doctrine, the district court concluded that a question of fact existed regarding the existence of a special relationship and accordingly denied summary judgment. The court did not address whether the defect should be considered "recently-discovered," thereby triggering a duty to warn.

We are not aware of any Utah case that imposes an independent post-sale duty to warn on successor corporations. The

---

**2.** The drafters of the Restatement (Third) of Torts expressly considered and rejected these new exceptions, noting that they represent a minority view and are unsound policy. Restatement (Third) of Torts § 12, cmts. a, b.

**3.** The district court also relied on our decision in *Florom v. Elliott,* 867 F.2d 570 (10th Cir. 1989). Aplt.App. at 64–65. However, because that case discussed Colorado, rather than Utah, law, we do not rely on it in this discussion.

Utah Supreme Court has, however, looked to the Restatement of Torts in the past for guidance on products liability issues. *See, e.g., Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301, 1302 (Utah 1981); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979) (adopting § 402A of the Restatement (Second) of Torts). The most recent version of the Restatement includes a provision that sets forth the circumstances in which an independent post-sale duty may be imposed on a successor corporation. Restatement (Third) of Torts § 13(a) (1998).[4] If the Utah Supreme Court adopts a rule similar to § 13, Metal Ware may have had a duty to warn the Tabors. If Utah does not adopt such a provision, summary judgment in favor of Metal Ware is appropriate.

Assuming a post-sale duty to warn, a question remains as to what a successor must do to discharge that duty. Under the Restatement, for example, a claimant against a successor corporation must establish that any warning would have been adequate. That is, a successor corporation has a duty to warn only if (1) the successor knows of the product risk; (2) product owners can be identified and assumed to be unaware of the risk; (3) a warning can be effectively communicated to and acted on by product owners, and (4) the risk of harm outweighs the burden of issuing the warning. Restatement (Third) of Torts § 13(b).[5] Under this provision, Metal Ware had a duty to warn only if the Tabors can establish that Metal Ware also had a way to effectively communicate the product defect to consumers. This question is particularly important in cases such as this one, where American Harvest knew of the product defect at the time the Tabors purchased the dehydrator and was also under a recall obligation pursuant to an agreement with the USCPSC.

Thus, if Utah law establishes an independent duty to warn, it should also set forth the notice requirements that a successor corporation should provide to discharge its duty. Depending on the answer to this question, the district court may need to revisit whether the Tabors could show that a warning could have been effectively communicated to them and that they would have in fact received any post-sale warning. Accordingly, we certify this issue to the Utah Supreme Court.

## III. Certification of Questions to the Utah Supreme Court

The United States Court of Appeals for the Tenth Circuit, on its own motion, pur-

---

**4.** This provision provides:

A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity, whether or not liable under the rule stated in § 12, is subject to liability for harm to persons or property caused by the successor's failure to warn of a risk created by a product sold or distributed by the predecessor if:
(1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor, and
(2) a reasonable person in the position of the successor would provide a warning.
Restatement (Third) of Torts § 13(a) (1998).

**5.** The section provides:

A reasonable person in the position of the successor would provide a warning if:
(1) the successor knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
(4) the risk of harm is sufficiently great to justify the burden of providing a warning.
Restatement (Third) of Torts § 13(b) (1998).

suant to 10th Cir. R. 27.1, submits to the Utah Supreme Court a request that the Court exercise its discretion pursuant to Utah R.App. P. 41 to accept the certified questions of Utah law set forth above. *See* Utah R.App. P. 41(c)(1)(B)-(C). This court concludes that certification of these questions will further the interests of comity and federalism by giving the Utah Supreme Court the opportunity to answer the questions in the first instance, should it elect to do so under Utah R.App. P. 41(e). The Clerk of this court shall transmit a copy of this certification order to counsel for all parties. The Clerk shall also forward, under the Tenth Circuit's official seal, a copy of this certification order and the briefs filed in this court to the Utah Supreme Court.

This appeal is ordered ABATED pending resolution of the certified question.