2007 UT 71

**Timothy A. TABOR, Debra J. Tabor, and Farmers Insurance Group, Plaintiffs and Appellants,**

v.

**The METAL WARE CORPORATION, a Wisconsin corporation; et al., Defendants and Appellee.**

No. 20060504.

Supreme Court of Utah.

Aug. 31, 2007.

 

Theodore E. Kanell, Joseph C. Alamilla, John Warren May, Salt Lake City, for appellants.

Brian C. Webber, Salt Lake City, for appellee.

DURHAM, Chief Justice:

## INTRODUCTION

¶ 1 This case comes to us on certification from the United States Court of Appeals for the Tenth Circuit, which asks first, "Does Utah law recognize an exception to the general rule of successor nonliability under the circumstances of this case?" and second, "Does Utah law impose on successor corporations a post-sale duty to independently warn customers of defects in products manufactured and sold by the predecessor corporation?" If we conclude that there is such a duty to warn, the federal court further asks, "What factors are considered in determining whether a successor has discharged that duty?"

## BACKGROUND

¶ 2 In the spring of 1996, Timothy and Debra Tabor purchased a food dehydrator manufactured by American Harvest, Inc. When the Tabors purchased the food dehydrator, they were unaware that, in August 1995, the United States Consumer Products Safety Commission (USCPSC) had issued a manufacturer's recall because the food dehydrator constituted a fire hazard due to a faulty heating element. In February of 1996, the USCPSC completed and closed the recall process.

¶ 3 On April 2, 1997, Newco of Two Rivers, Inc. (Newco), a subsidiary of Metal Ware, entered into an asset purchase agreement with American Harvest. The agreement contained a "No Assumption of Liabilities" clause that stated that Newco "shall not assume or become liable for any contracts, obligations, or liabilities of [American Harvest] (including, but not limited to, ... product liability ...) and [American Harvest] shall indemnify and hold [Newco] harmless for any liability arising out of any such contracts, obligations, or liabilities." Among the

assets purchased was American Harvest's line of food dehydrators, which included the food dehydrator model purchased by the Tabors. After the asset purchase, Newco continued to manufacture this line under the American Harvest trade name. When Newco was absorbed by Metal Ware, Metal Ware also continued to manufacture the line of food dehydrators under the American Harvest trade name. On November 19, 1998, a fire destroyed the Tabor's home. The Tabors allege that the American Harvest food dehydrator caused the fire.

¶ 4 The Tabors sued Metal Ware in the federal district court of Utah, claiming, among other things, that Metal Ware was liable for damages caused by the defective food dehydrator both as American Harvest's successor and because of its failure to independently warn the Tabors that the product was defective. The federal court consolidated the Tabors' suit with the subrogation action filed by Farmers Insurance Company, the Tabors' insurance carrier. The court granted Metal Ware's motion for summary judgement, concluding that under the traditional rule of successor nonliability, successor corporations are not liable for the defective products of a predecessor, subject only to four widely recognized exceptions. Accordingly, the court rejected the Tabors' claim that Utah would adopt two additional exceptions recognized by a minority of jurisdictions, namely, the continuity of enterprise and product line theories. The court concluded that Utah law would impose an independent duty to warn on successor corporations; however, the court determined that the Tabors failed to establish that their damages were caused by Metal Ware's failure to warn. Both the Tabors and Farmers Insurance Company appealed to the Tenth Circuit Court of Appeals, which has now certified controlling questions of law to us.[1] We have jurisdiction over certified questions of state law pursuant to Utah Code section 78–2–2(1) (2002).

## STANDARD OF REVIEW

¶ 5 When a federal court certifies questions of state law, "we answer the legal

questions presented without resolving the underlying dispute." *In re Kunz*, 2004 UT 71, ¶ 6, 99 P.3d 793 (internal quotation marks omitted).

## ANALYSIS

¶ 6 To aid the federal court in this matter, we must determine the breadth of successor nonliability recognized by Utah law and decide whether a successor corporation has an independent duty to warn consumers of its predecessor's defective products. We conclude that Utah adheres to the traditional rule of successor nonliability, subject to four exceptions, as set forth in section 12 of the Restatement (Third) of Torts. Further, Utah imposes on a successor corporation an independent post-sale duty to warn of a predecessor corporation's product defects under the conditions outlined in section 13 of the Restatement (Third) of Torts.

## I. UTAH ADHERES TO THE TRADITIONAL RULE OF SUCCESSOR NONLIABILITY, SUBJECT TO FOUR WIDELY RECOGNIZED EXCEPTIONS

¶ 7 The general rule of successor nonliability and its four exceptions are outlined in the Restatement (Third) of Torts section 12, which provides as follows:

A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity is subject to liability for harm to persons or property caused by a defective product sold or otherwise distributed commercially by the predecessor if the acquisition:

(a) is accompanied by an agreement for successor to assume such liability; or

(b) results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor; or

(c) constitutes a consolidation or merger with the predecessor; or

(d) results in successor becoming a continuation of the predecessor.

---

**1.** The Tabors and Farmers Insurance Company have taken the same position in this lawsuit. Thus, any reference here to the Tabors' position is that of Farmers Insurance Company as well.

Restatement (Third) of Torts: Products Liability § 12 (1998).

¶ 8 The Tabors have not claimed that any of the four traditional exceptions apply to their claim. Instead they ask us to recognize the additional "product line" exception, the "continuity of enterprise" exception, or both. These exceptions have been recognized in only a minority of jurisdictions. *See* Restatement (Third) of Torts: Products Liability § 12 cmt. b, c. In our view, the general rule of successor nonliability, together with the four exceptions provided by section 12, affords adequate protection to consumers, and we accordingly decline to expand the exceptions.

■ ¶ 9 The continuity of enterprise theory urged by the Tabors holds a successor corporation liable when:

(1) There was basic continuity of the enterprise of the seller corporation, including ... a retention of key personnel, assets, general business operations, and even the [product or trade] name.

(2) The seller corporation ceased ordinary business operations, liquidated, and dissolved soon after distribution of consideration received from the buying corporation.

(3) The purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation.

(4) The purchasing corporation held itself out to the world as the effective continuation of the seller corporation.

*Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 244 N.W.2d 873, 883–84 (1976).[2]

■ ¶ 10 The product line exception holds a successor corporation liable if it acquires "substantially all the manufacturing assets" and "undertakes essentially the same manufacturing operation" despite the fact that the successor was not involved in the design,

manufacture, distribution, or sale of the successor corporation's defective product. *Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 431 A.2d 811, 825 (1981).

■ ¶ 11 Courts adopting these exceptions justify the decision to do so on the theory that the predecessor is no longer available and the successor is in a better financial position to bear the cost of injury than the consumer-victim. *Decius v. Action Collection Serv., Inc.,* 2004 UT App 484, ¶ 14, 105 P.3d 956. Courts also base their decision on the fact that the successor profits from exploiting the predecessor's goodwill and reputation. *Id.* We acknowledge these points but are not persuaded that they justify disrupting the policy balance reflected in the Restatement. We decline to adopt either the product line or the continuity of enterprise exception because we believe that the four exceptions to the traditional rule provide adequate protection to consumers. We note that if the legislature believes the existing exceptions inadequately protect consumers, it may wish to create additional statutory protections. *See* Michael D. Green, *Successor Liability: The Superiority of Statutory Reform to Protect Products Liability Claimants,* 72 Cornell L.Rev. 17, 41 (1986) (suggesting that consumers could receive additional protection through a dissolution-restricting statute making a predecessor corporation's assets available to future products liability claimants). Thus, we adopt the traditional rule of successor nonliability and its four exceptions as outlined in section 12 of the Restatement (Third) of Torts.

II. UTAH LAW IMPOSES ON SUCCESSOR CORPORATIONS AN INDEPENDENT POST–SALE DUTY TO WARN CONSUMERS OF DEFECTS IN PRODUCTS MANUFACTURED AND SOLD BY THE PREDECESSOR CORPORATION

■ ¶ 12 The second certified question asks, "Does Utah law impose on successor

---

**2.** We note that this doctrine seeks to expand the existing continuation exception, contained in section 12(d) of the Restatement (Third) of Torts. It does so by eliminating burdens like the necessity of proving a common identity "of officers, directors, and shareholders in the predecessor and successor corporations." *See* Restatement (Third) of Torts: Products Liability § 12 cmt. g. We believe, however, that the traditional exceptions are broad enough to provide justice and sufficiently protect consumers.

corporations a post-sale duty to independently warn customers of defects in products manufactured and sold by the predecessor corporation?" If we conclude that it does, the Tenth Circuit then asks, "What factors are considered in determining whether a successor has discharged that duty?" We conclude that Utah does impose an independent post-sale duty on successor corporations to warn customers of defects in products manufactured and sold by the predecessor corporation as outlined in section 13 of the Restatement (Third) of Torts. Section 13 provides:

(a) A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity, whether or not liable under the rule stated in § 12, is subject to liability for harm to persons or property caused by the successor's failure to warn of a risk created by a product sold or distributed by the predecessor if:

(1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor, and

(2) a reasonable person in the position of the successor would provide a warning.

(b) A reasonable person in the position of the successor would provide a warning if:

(1) the successor knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and

(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and

(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and

(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Products Liability § 13 (1998).

¶ 13 We leave it to the federal court to apply the duty to warn standard outlined in section 13 of the Restatement (Third) of Torts. If a successor corporation has a duty to warn under section 13, one factor in determining whether a successor corporation has discharged its duty to warn is whether it provided warning to the end user, not just an intermediary like a distributor or retailer.[3] In making this determination, the successor has a duty to only warn the end user if it has a reasonable means of doing so. Another factor to consider in this case might be the effect of the closed USCPSC recall. Other factors may be relevant, but the factual development of this case is insufficient for us to identify them.

## CONCLUSION

¶ 14 In response to the certified questions presented to us, we conclude that Utah adheres to the general rule of successor corporation nonliability, subject to the traditional four exceptions, as recognized in the Restatement (Third) of Torts section 12. We decline to adopt either the product line or the continuity of enterprise exceptions at this time. Furthermore, we hold that Utah law does impose a duty to warn on a successor corporation in accordance with section 13 of the Restatement (Third) of Torts.

¶ 15 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM'S opinion.

---

3. Thus, if Metal Ware does have a duty to warn, it would owe that duty to end users, like the Tabors, not just its retail distributors, such as Shopko.